UNITED STATES, Appellant

v

MARVIN A. ALPHIN, Airman First Class, U. S. Air Force, Appellee

15 USCMA 14, 34 CMR 460

*Captain Donald Brewer* argued the cause for Appellant, United States. With him on the brief was *Colonel Emanuel Lewis.*

*Major Hugh J. Dolan* argued the cause for Appellee, Accused. With him on the brief were *Colonel Daniel E. Henderson, Jr.,* and *Lieutenant Colonel James W. Logan.*

## Opinion of the Court

FERGUSON, Judge:

Returning home unexpectedly in the wee hours of the morning the accused found his wife disporting herself with another airman in the family quarters. Arming himself with a Luger, he abruptly terminated the liaison by homicidally dispatching the airman, who proved too slow in departing from the scene of his adulterous intrigue. In consequence, the accused was tried by general court-martial and convicted of voluntary manslaughter, in violation of Uniform Code of Military Justice, Article 119, 10 USC § 919. He was sentenced to bad-conduct discharge, forfeiture of $50.00 per month for one year, confinement at hard labor for a like period, and reduction. The convening authority approved the sentence and directed the accused's confinement in the 3320th Retraining Group, Amarillo Air Force Base, Texas. We are informed that he has since been probationally restored to duty.

The board of review set aside the findings of guilty and ordered a rehearing on the basis that the instructions regarding accused's alleged lack of mental responsibility were prejudicially erroneous. Its decision has been certified to us by The Judge advocate General of the Air Force upon the following question:

"WAS THE BOARD OF REVIEW CORRECT IN ITS CONCLUSION THAT IN THE CIRCUMSTANCES OF THIS CASE THE LAW OFFICER'S INSTRUCTIONS CONCERNING IRRESISTIBLE·IMPULSE (UNITED STATES V. JENSEN, 14 USCMA 353) WERE PREJUDICIALLY ERRONEOUS?"

Substantial evidence was adduced by the defense tending to establish that, at the time of the homicide, the accused was undergoing a psychotic episode, which prevented him, with respect to the offense charged, from being able either to distinguish right from wrong or to adhere to the right. On the other hand, testimony proffered by the United States indicated that the accused suffered from no mental disorder, was fully possessed of the ability to know right from wrong, and was able to refrain from shooting his wife's paramour. Thus, the proof posed an issue of mental responsibility to be resolved by the fact finders.

In advising the court members regarding this question, the law officer informed them, among other things:

". . . If the accused would not have committed the act had the circumstances been such that immediate detection and apprehension were certain, he cannot be said to have acted under an irresistible impulse."

The instruction is, as the Government concedes, erroneous. See United States v Jensen, 14 USCMA 353, 34 CMR 133, and United States v Jor-

dan, 14 USCMA 393, 34 CMR 173. It urges, however, that the error was harmless, as all the expert witnesses were agreed that the accused would not have been deterred by the prospect of immediate detection and apprehension. Thus, it contends that the members could not have been misled by imposition of the wrong standard.

The position of the United States, however, overlooks the fact that the court is not limited to ▪ the testimony of expert witnesses in determining whether an accused is mentally responsible, nor are the opinions of such witnesses binding upon it. See United States v Carey, 11 USCMA 443, 29 CMR 259, and United States v Wynn, 11 USCMA 195, 29 CMR 11. While expert testimony cannot arbitrarily be ignored, as the Chief Judge noted in *Carey*, supra, at page 449:

". . . The opinion of a psychiatrist on the medical aspects of the accused's mental condition does not define the scope of the responsibility of the court-martial. The court must consider all the evidence, assigning to each item the weight to which it is entitled. In some instances, the opinion of the medical expert that the accused is mentally incompetent may not be outweighed by the other evidence of sanity. . . . In other cases, the opinion of the expert may be so materially weakened by his own omissions or by other circumstances as to justify the triers of facts in giving little weight to the opinion."

Here, the court members were required by the law officer's instruction to find that the accused ▪ would have done the act charged despite the risk of immediate detection and apprehension in order to conclude that he was unable to adhere to the right. Looking to the other evidence presented, it may well have concluded that, despite the psychiatric testimony, his action would have been deterred by such circumstance. Thus, we agree with the board of review that the Government's argument is "no more than a rationalization of the evidence and an invitation to apply the law to the evidence and resolve the issue against the accused." See United States v Carmon, 14 USCMA 103, 33 CMR 315; United States v Black, 12 USCMA 571, 31 CMR 157. Under the circumstances here depicted, there is, as the board found, a fair risk that the erroneous instructions prejudiced the substantial rights of the accused.[1]

The certified question is answered in the affirmative, and the decision of the board of review affirmed.

Chief Judge QUINN and Judge KILDAY concur.

[1] Our decision as to the certified question, dealing as it does with the narrow issue of prejudice arising from a concededly erroneous instruction, does not imply approval of the balance of the advice regarding the issue of accused's mental responsibility. Our examination of the record, indeed, indicates that the law officer satisfied himself with the use of the standard form normally utilized by the military judiciary. As this case must be reheard, we particularly invite attention to our decisions in United States v Acfalle, 12 USCMA 465, 31 CMR 51, and United States v Smith, 13 USCMA 471, 33 CMR 3, that instructions should embody the respective theories of the parties and be closely tailored to the evidence presented.